**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

```
┌─ F  I  L  E  D ─┐
│                 │
│   DEC - 3 2008  │
│                 │
└─────────────────┘
CLERK, U.S. DISTRICT COURT
   ALEXANDRIA, VIRGINIA
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:08cr241 |
| | ) | |
| SALVADOR MAURICIO ELIAS MIRANDA | ) | |

## ORDER

Defendant, Salvador Mauricio Elias Miranda, was convicted by a jury of two counts of making false statements to a grand jury investigating two murders. The question presented at sentencing—somewhat novel in this circuit—was whether the Sentencing Guidelines cross-reference provision for perjury "in respect to a criminal offense" applied in this case to require that defendant's guidelines range be determined by reference to the base offense level for accessory after the fact to the underlying offense of first-degree murder. *See* U.S.S.G. § 2J1.3(c)(1) (providing that where the perjury is "in respect to a criminal offense," the offense level is determined by reference to guideline for accessory after the fact to that criminal offense). Specifically, the question was whether the cross-reference provision was applicable where, as here, defendant, testifying before the grand jury, falsely denied ever being a member of the gang Mara Salvatrucha ("MS-13") or attending meetings of one of its cliques while knowing full well that he had been granted immunity to give testimony concerning two murders the grand jury was investigating and had reason to believe were committed by members of that same MS-13 clique.

The Probation Officer concluded that the cross-reference provision was applicable in the circumstances of this case, and accordingly determined that defendant's offense level, by reference

-1-

to the accessory-after-the-fact and murder guidelines, should be 30. Defendant noted a timely objection, and the matter was fully briefed and argued prior to the imposition of sentence. In the end, for the reasons stated from the Bench, defendant's objection was overruled. This Order reflects that ruling and elucidates the bases for it.

**I**

In June 2007, a federal grand jury in the Eastern District of Virginia commenced an investigation into two murders believed to be connected to MS-13, and specifically, the Hollywood clique of MS-13. The first, the "Confetti's" murder, occurred in November 2005, and the second, the "Commerce Street" murder, occurred in June 2007. In connection with this investigation, defendant was arrested and held on a material witness warrant that issued based on information (i) that defendant was a member of the Hollywood clique; (ii) that defendant associated with Oscar Omar Lobo-Lopez, a member of the Hollywood clique known as "Joker," who was a suspect in both murders; and (iii) that defendant had been present at the scene of the Confetti's murder. Prior to testifying before the grand jury, defendant, with the aid of counsel, was granted formal statutory immunity. Thereafter, defendant testified before the grand jury on both April 10, 2008, and May 14, 2008. There is no dispute defendant was aware the grand jury was investigating the MS-13 Hollywood clique members' involvement in the two murders, including specifically Lobo-Lopez.

In the course of his testimony, defendant flatly denied membership in both MS-13 and the gang's Hollywood clique, and defendant further denied ever having claimed to be a gang member. In June 2008, defendant was indicted on four counts of perjury, in violation of 18 U.S.C. § 1623, based on his testimony before the grand jury. Specifically, the indictment alleged that defendant committed perjury (i) when defendant testified on April 10, 2008, that he was not a member of MS-

13 ("Count One"); (ii) when defendant testified on May 14, 2008, that he was not a member of MS-13, had never been a member of MS-13 while living in the United States, and had never claimed to be a member of MS-13 ("Count Two"); (iii) when defendant testified on May 14, 2008, that he was not a member of the Hollywood clique ("Count Three"); and (iv) when defendant testified on May 14, 2008, that he had never attended a meeting of the Hollywood clique ("Count Four"). In his testimony before the grand jury, defendant also denied having known that Lobo-Lopez was a member of MS-13 or was known by the nickname Joker.

At trial, several witnesses testified that defendant had been a member of MS-13 and had attended meetings of the Hollywood clique. Moreover, defendant testified and admitted having been a member of MS-13 and admitted having attended meetings of the Hollywood clique. Defendant testified that his association with MS-13 and the Hollywood clique began as early as 2002, increased substantially in 2004, and continued into late 2005 or early 2006, at which point defendant testified he decided to leave the gang. Other trial witnesses confirmed that defendant's membership in the gang had extended throughout most of 2005—the year of the Confetti's murder. Additionally, defendant admitted on cross-examination that he had lied during his grand jury testimony regarding his knowledge of Lobo-Lopez's gang participation and nickname, and other trial witnesses confirmed that defendant had associated with Lobo-Lopez on numerous occasions when the two were members of the Hollywood clique, including during 2005.

At the conclusion of the three-day trial, the jury acquitted defendant on counts One and Three and convicted him on Counts Two and Four, finding that he had made material false statements to the grand jury, in violation of § 1623, when he (i) denied having ever been a member of MS-13 while living in the United States, (ii) denied having ever claimed to have been a member of MS-13, and

-3-

(iii) denied having attended meetings of the Hollywood clique.

At sentencing, defendant's objection to the application of the cross-reference provision, § 2J1.3(c)(1), was overruled, and defendant's total offense level was then correctly set at 30,[1] which combined with his criminal history (III), resulted in a guidelines range of 121–151 months. The maximum allowable custody sentence was in turn capped by statute at 120 months,[2] and defendant ultimately received a variance custody sentence of 62 months.[3]

## II

Analysis of the question presented properly begins with a consideration of § 2J1.3(c)(1)'s

---

[1] This offense level was arrived at by applying the cross-reference provision, § 2J1.3(c)(1), which in turn led to § 2X3.1(a), the guideline providing that the offense level for accessory after the fact should be six levels lower than the offense level for the underlying offense, but in no event greater than 30. *See* U.S.S.G. § 2X3.1(a)(1), (3)(A). Because the offense level for the underlying offense—first-degree murder—is 43, the appropriate offense level here was capped at 30. *See* U.S.S.G. § 2A1.1(a) (first-degree murder guideline).

[2] *See* § 1623(a) (providing 60-month maximum term of imprisonment for each count of conviction); U.S.S.G. § 5G1.2(d) (providing that sentences on multiple counts should run consecutively when the statutory maximum is less than the calculated guidelines range).

[3] After argument and defendant's allocution, it was this Court's judgment that, in light of a careful weighing of the 18 U.S.C. § 3553(a) factors, a 62-month variance custody sentence was "sufficient, but not greater than necessary" to achieve the purposes set forth in § 3553(a)(2). *See* § 3553(a). Specifically, a 62-month custody sentence adequately furthers the important goal of generally deterring persons—including MS-13 members—from testifying falsely before a grand jury; additionally, specific deterrence of defendant is unnecessary, as he will be promptly deported at the end of his custody sentence. *See* § 3553(a)(2)(B). Moreover, the sentence imposed avoids unwarranted disparities, as a review of recent grand jury perjury sentences in public corruption cases in this circuit reveals that the sentence imposed on defendant is approximately twice as long as those sentences, which is appropriate given the seriousness of the crimes under investigation by the grand jury here. *See* § 3553(a)(2) (offense seriousness), (a)(6) (avoidance of unwarranted disparities).
    In the end, § 3553(a) is an unmistakably clear reminder that sentencing is not merely an arithmetic or formulaic exercise; while the sentencing process requires the correct calculation of the guidelines and any appropriate departures, the ultimate selection of an appropriate sentence is, at its core, a judgment as to the sentence that is no greater than necessary to achieve the purposes set forth in § 3553(a)(2).

language, which, in pertinent part, states as follows:

> If the offense involved perjury . . . in respect to a criminal offense, apply § 2X3.1 (Accessory After the Fact) in respect to that criminal offense, if the resulting offense level is greater than that determined above.

U.S.S.G. § 2J1.3(c)(1). The question presented, therefore, is whether defendant's perjury was "in respect to a criminal offense," namely the two murders that were the focus of the grand jury's investigation.

The phrase "in respect to" is not obscure; it has a plain meaning, namely "relating to" or "concerning."[4] Here, defendant's perjury clearly "related to" the criminal offense of murder—specifically, the two murders under investigation by the grand jury. Defendant knew that the grand jury was investigating the potential involvement of MS-13, the Hollywood clique, and Lobo-Lopez in those two murders, and he knew further that he had been called before the grand jury because of his past involvement in MS-13 and the Hollywood clique. Thus, when defendant perjured himself about his past membership in MS-13 and his attendance at Hollywood clique meetings, he knew that his lies "related to" the murders being investigated by the grand jury. Accordingly, the facts of this case fit squarely within the plain language of § 2J1.3(c)(1).

This conclusion also gives full effect to § 2J1.3(c)(1)'s underlying purpose, which is to measure the gravity of a defendant's perjury by taking into account the context in which the perjury occurred and adjusting the defendant's offense level accordingly. As this circuit has stated, § 2J1.3(c)(1) "borrow[s] the formula in § 2X3.1 to treat a defendant who has perjured himself in

---

[4] *See* "Respect," *Merriam-Webster Online Dicionary* (2008), http://www.merriam-webster.com/dictionary/respect (defining the phrase "in respect to" as "with respect to" or "concerning"); "Concerning," *Merriam-Webster Online Dictionary* (2008), http://www.merriam-webster.com/dictionary/concerning (defining the word "concerning" as "relating to" or "regarding").

relation to a criminal offense *as if* he was convicted of being an accessory." *United States v. Dickerson*, 114 F.3d 464, 468 n. 1 (4th Cir. 1997) (quoting *United States v. Martinez*, 106 F.3d 620, 621 (5th Cir. 1997)) (emphasis added).[5] Here, application of the cross reference is consistent with the Sentencing Commission's intended objective, namely calculation of an offense level that takes into account the seriousness of the defendant's decision to lie despite his knowledge that he was testifying before a grand jury investigating two first-degree murders.

Defendant seeks to avoid this result by arguing first, that grand jury perjury is not "in respect to a criminal offense" unless the false testimony is given in response to a direct question about an element of the offense or the offense itself. This argument fails, as it calls for a pinched reading of the phrase that is flatly contradicted by its plain meaning. Reading the phrase as defendant urges would limit the application of § 2J1.3(c)(1) to the relatively rare case where the government can prove perjury in response to a direct question about an aspect or element of the offense itself. Had the Sentencing Commission intended so narrow a scope for § 2J1.3(c)(1), it would have chosen appropriate restrictive language, not the plain broad language it chose.

Defendant next argues that reading § 2J1.3(c) in accordance with its plain meaning will have the effect of rendering meaningless a companion provision, § 2J1.3(b)(2). This argument also fails; it misapprehends § 2J1.3(b)(2)'s role, which is left intact by giving § 2J1.3(c)(1)'s phrase, "in respect to," its plain meaning. Section 2J1.3(b)(2) provides for a three-level enhancement where the "perjury

---

[5] *See also United States v. Conley*, 186 F.3d 7, 25 (1st Cir. 1999) ("[T]he purpose of the cross-reference in . . . the perjury . . . guideline[] is to measure the gravity of th[e] offense[].''); *United States v. Suleiman*, 208 F.3d 32, 39 (2d Cir. 2000) ("The purpose of 'in respect to' as applied to perjury before a grand jury . . . is to treat more severely perjuries that risk an incomplete or an inaccurate investigation or trial of a criminal offense."), *cited in United States v. Harris*, 269 Fed. App'x 288, 290–91 (4th Cir. 2008) (per curiam) (unpublished).

. . . resulted in substantial interference with the administration of justice . . . ." U.S.S.G. § 2J1.3(b)(2). It applies, for example, in cases involving bribery of a witness to testify falsely to a Congressional committee on a non-criminal matter. *See* 18 U.S.C. § 201(b)(3), (4); U.S.S.G. App. A. Thus, there are crimes that call for application of § 2J1.3 and "result[] in substantial interference with the administration of justice" under § 2J1.3(b)(2) *without* being "in respect to a criminal offense" under § 2J1.3(c)(1). Additionally, subsection (b)(2) may also apply where the application of subsection (c)(1) results in an offense level of 17 or less, as would occur if the perjury were "in respect to" a minor criminal offense.[6] In sum, giving § 2J1.3(c)(1) its plain meaning does not rob § 2J1.3(b)(2) of its meaning.

Finally, defendant argues that giving the phrase "in respect to a criminal offense" its plain meaning would have the effect of applying § 2J1.3(c)(1) to all perjury offenses that occur in the grand jury or during a criminal proceeding. This argument also fails, as it is partly inaccurate, and to the extent it is accurate, it does not count against the result reached here. The argument is inaccurate because it ignores that § 2J1.3(c)(1) applies only where the resulting offense level is greater than the offense level calculated by application of § 2J1.3(a)'s base offense level of 14 and any appropriate § 2J1.3(b) enhancements for specific offense characteristics.[7] Thus, as noted above,

---

[6] *See* § 2J1.3(c)(1) (providing for application of cross reference only where "the resulting offense level is greater than that determined above"). Specifically, § 2J1.3(a) provides for a base offense level of 14, and § 2J1.3(b)(2) provides for a three-level enhancement where the perjury results in the substantial administration of justice. U.S.S.G. § 2J1.3(a), (b)(2). Accordingly, § 2J1.3(c)(1) only displaces § 2J1.3(b)(2) where both subsections are triggered *and* application of § 2J1.3(c)(1) results in an offense level greater than 17.

[7] *See supra* at note 6. In addition to § 2J1.3(b)(2)'s enhancement for actual interference with the administration of justice, § 2J1.3(b)(1) also provides for an eight-level enhancement where an offense "involved causing or threatening to cause physical injury to a person, or property damage, in order to suborn perjury . . . ." U.S.S.G. § 2J1.3(b)(1).

§ 2J1.3(c)(1) does not apply when the perjury is "in respect to" a minor criminal offense.[8] Moreover, the fact that § 2J1.3(c)(1) applies to all other instances of perjury "in respect to a criminal offense—*i.e.*, those for which application of § 2J1.3(c)(1) yields an offense level greater than that provided by § 2J1.3(a) and (b)—is no argument against this result; to the contrary, it is entirely appropriate and consistent with § 2J1.3(c)(1)'s purpose of ensuring a guidelines range for perjury offenses that adequately takes into account the gravity of the context in which the perjury occurred.

There is scant authority on the question presented here, but what does exist firmly supports the result reached here. And although there is no published authority in this circuit on the question presented, there is an unpublished Fourth Circuit case directly on point. Specifically, in *United States v. Harris*, 269 Fed. App'x 288 (4th Cir. 2008) (per curiam) (unpublished), the defendant committed perjury before a grand jury investigating methamphetamine trafficking at a particular residence when he denied having been to that residence on more than one occasion. *Id.* at 290. On those facts, a Fourth Circuit panel upheld the application of the § 2J1.3(c)(1) cross reference. *Id.* Even if not binding, the *Harris* panel opinion is highly persuasive.[9] In this respect, it is noteworthy that the

---

[8] *See supra* at notes 6, 7. Thus, absent a § 2J1.3(b) specific offense characteristic enhancement, § 2J1.3(c)(1) only applies where it results in an offense level greater than 17. Where a § 2J1.3(b) enhancement is appropriate, § 2J1.3(c)(1) is only triggered where it results in an offense level higher than the offense level calculated by subsections (a) and (b) of § 2J1.3—which, depending on which § 2J1.3(b) enhancements apply, may be 17, 22, or 25. Here, neither party argued that a § 2J1.3(b) enhancement was appropriate, and in any event, because application of § 2J1.3(c)(1) results in an offense level of 30, which is higher than any calculation that could result from § 2J1.3(a) and (b), the cross reference applies.

[9] Given the Fourth Circuit's criteria for publication of its panels' opinions, it is difficult to see why *Harris* was unpublished. *See* 4th Cir. R. 36(a)(i) (providing for publication where an opinion "establishes, alters, modifies, clarifies, or explains a rule of law within th[e] [Fourth] Circuit"). In any event, for the reasons stated, the *Harris* panel's reasoning—uncontradicted by any other circuit's authority—is highly persuasive here.

*Harris* panel, citing to published Second Circuit authority, observed that the "in respect to" language is "not limited to false statements given in response to a question referring to a criminal offense" and that the "purpose of the cross reference is to treat more severely perjuries that risk an incomplete or inaccurate investigation before a grand jury." *Id.* at 290–91 (citing *United States v. Suleiman*, 208 F.3d 32, 39 (2d Cir. 2000)). The *Harris* panel went on to note that given that the defendant there "had ample notice that the grand jury was investigating a criminal offense, and that his statements, if false, could impede the progress or accuracy of such an investigation," the § 2J1.3(c)(1) cross reference appropriately measured the seriousness of the perjury at issue by applying the accessory-after-the-fact guideline for the underlying methamphetamine charges being investigated by that grand jury. *Id.* at 291.

Similarly, in *Suleiman*, the Second Circuit held that a district court erred when it refused to apply the § 2J1.3(c)(1) cross reference, and the corresponding accessory-after-the-fact guideline for conspiracy to bomb a building in interstate commerce, where a defendant committed perjury before a grand jury that was investigating the 1993 bombing of the World Trade Center. 208 F.3d at 38–40. The Second Circuit first observed that "[p]erjuries committed before grand juries investigating crimes will usually risk" an incomplete or inaccurate grand jury investigation. *Id.* at 39. Accordingly, "as long as the witness has been alerted to the fact that the grand jury is investigating a criminal offense, false answers to material questions will almost always merit enhanced punishment." *Id.* The Second Circuit further noted that because of the broad, investigative function of the grand jury, a grand jury's "questions need not always specifically refer to the underlying offense and would sometimes be ineffective if they did." *Id.* at 40. Thus, the defendant in *Suleiman* committed perjury "in respect to" the criminal offense of conspiracy to bomb a building in interstate commerce when,

*inter alia*, (i) he denied having knowledge about the travel plans of a suspect, and (ii) he denied having seen various items in that suspect's possession. *Id.* at 35, 40. It is noteworthy that in reaching this result, the Second Circuit rejected the defendant's argument that the cross reference was inapplicable because his perjury was not a result of direct questions about the elements of the offense under investigation. As the Second Circuit put it:

> A witness, punishable for any false answer, deserves enhanced punishment for a false answer that obstructs an inquiry concerning a criminal offense, and a witness, informed of the subject of such an inquiry, may not avoid the [cross-reference's] enhancement just because the question to which he gave a false answer did not alert him to the precise link between the question and the offense under inquiry.

*Id.* at 40. In other words, what merits enhanced punishment is the defendant's decision to lie to the grand jury in the face of knowledge about the serious nature of the grand jury's investigation, not the defendant's understanding of the connection between the lie and the criminal offense at issue.

The Second Circuit's reasoning in *Suleiman*—which was adopted not just by the *Harris* panel, but also by at least three other circuits[10]—is persuasive here. There is no dispute that defendant here knew he was testifying before a grand jury that was investigating two MS-13-related murders. And despite knowledge of the gravity of the grand jury's investigation and a formal grant

---

[10] *See United States v. Blanton*, 281 F.3d 771, 776 (8th Cir. 2002) (citing *Suleiman* and finding application of the cross reference appropriate "when an AUSA informs [the] witness of the nature of the grand jury's inquiry either prior to or during [that witness's] grand jury testimony"); *United States v. Olsen*, 519 F.3d 1096, 1105–06 (10th Cir. 2008) (citing *Suleiman* in application of the cross reference and observing that "the more serious the subject matter of the affected investigation, the greater the resulting sentence"); *United States v. Bova*, 350 F.3d 224, 229–30 (1st Cir. 2003) (applying *Suleiman*'s language but finding the cross reference inapplicable in the context of a bail proceeding that "had little potential to interfere with prosecution of the crimes lied about"); *see also United States v. Benitez*, 194 Fed. App'x 678, 680-682 (11th Cir. 2006) (unpublished) (applying *Suleiman* and finding that for perjury to be "in respect to" a drug conspiracy, "the perjury would have to have had the potential to disrupt the government's investigation or prosecution of that crime").

of immunity,[11] defendant nonetheless perjured himself. As in both *Harris* and *Suleiman*, application

of § 2J1.3(c)(1)'s cross reference provides an appropriately-enhanced offense level.

Significantly, defendant has cited no circuit authority that contradicts *Suleiman, Harris*, or

the standard applied here, nor has any such authority been found. Instead, defendant argues that the

Fourth Circuit, in *United States v. Jamison*, 996 F.2d 698 (4th Cir. 1993), engrafted an additional

requirement onto the plain language of § 2J1.3(c)(1). Specifically, defendant points to the Fourth

Circuit's statement in *Jamison* that for purposes of defining the scope of § 2J1.3(c)(1), "[t]he

intended effect of the false statement, as distinguished from the speaker's motivation for making it,

is dispositive." *Id.* at 701. The language "intended effect," defendant argues, was used by the Fourth

Circuit because the cross reference should apply only where a court finds that a defendant's intended

effect in making a statement was to assist himself or another in escaping prosecution for a crime.

Defendant further argues that because he lied not with the intent of aiding Lobo-Lopez, but only to

protect himself and his family, the § 2J1.3(c)(1) cross reference should not apply. Defendant's

argument misapprehends the meaning of the phrase "intended effect" as used in *Jamison*. Indeed,

were "intended effect" to require a court to inquire into *why a defendant chose to lie*, the latter half

of the Fourth Circuit's statement in *Jamison*—"as distinguished from the speaker's motivation for

making it"—would contradict the phrase "intended effect" and render the sentence meaningless.

Instead, the sensible reading of *Jamison*'s use of "intended effect" is that the Fourth Circuit used that

phrase to refer to a defendant's intended effect of *providing the listener* with a material false

statement that would potentially derail that listener's fact-finding or investigative process despite that

---

[11] It is also worth noting that defendant did not seek any form of witness protection prior to his grand jury testimony.

defendant's knowledge of the seriousness of that process. This interpretation is consistent with the result actually reached in *Jamison*, as the Fourth Circuit reversed a district court's refusal in that case to apply the § 2J1.3(c)(1) cross reference where the defendant, like the defendant here, objected on the basis that his motivation for lying was not to assist another to escape punishment by the government, but rather was to avoid reprisals. *Id.* at 700, 702. This is a sensible result, as is the result reached here, because inquiry into a defendant's potentially mixed motivations for committing perjury would be a highly problematical endeavor and not an appropriate part of the § 2J1.3(c)(1) "in respect to" inquiry.[12]

In sum, the result reached here is consistent with both the plain language and purpose of § 2J1.3(c)(1), and also with the meager case law interpreting this provision. Indeed, it would be odd to preclude application of the cross reference, as defendant urges, on the basis of defendant's belief that the grand jury's questions were somehow unrelated to the serious charge under investigation or defendant's claims about his motives for lying. Instead, the cross reference's use of the broad phrase "in respect to" is a recognition that the rationale for enhanced punishment is a defendant's willingness to tell a material lie *notwithstanding that defendant's knowledge of the seriousness of the underlying crime the grand jury is investigating.* Thus, where, as here, defendant knew that he was lying to a grand jury investigating two first-degree murders, the Sentencing Commission, in § 2J1.3(c)(1), has provided for an appropriate offense level enhancement.

---

[12] It is also worth noting the Fourth Circuit's observation in *Jamison* that the better vehicle for inquiry into a defendant's motivation for making a false statement is the duress guideline. *See* U.S.S.G. § 5K2.12 (providing for downward adjustments where a defendant is coerced into testifying falsely), *cited in Jamison*, 996 F.2d at 702, n. 4 (observing that on remand the district court could consider § 5K2.12, not raised by the defendant in that case during the initial sentencing hearing). Here, defendant unsuccessfully sought a departure pursuant to § 5K2.12.

Accordingly, for the reasons stated from the Bench and elucidated herein, and for good cause,

It is hereby **ORDERED** that defendant's objection to application of the § 2J1.3(c)(1) cross reference is **OVERRULED.**

The Clerk is directed to send a copy of this Order to all counsel of record.

Alexandria, Virginia
December 3, 2008

_____
T. S. Ellis, III
United States District Judge

-13-